[Civ. No. 22882. Second Dist., Div. One. July 28, 1958.]

GWEN ELLIOTT, Respondent, v. VICTOR W. ELLIOTT, Appellant.

Wise, Kilpatrick & Pulley and Loyal C. Pulley for Appellant.

Raymond C. Simpson and Frederik W. Chel for Respondent.

LILLIE, J.—This appeal is from an interlocutory judg-' ment granting a divorce on the ground of extreme cruelty to the wife and a divorce on the same ground to the husband on his cross-complaint. Custody of the two minor children was awarded to the wife and the husband was ordered to pay $200 per month as alimony and $80 per month for the support of each child. A partnership interest in a business known as Shrimp Processors was held to be community property in which the wife was awarded a one-half interest. She was also awarded the sum of $7,509.78 representing one-half of the community interest (accretion) in MacLean's Frozen Pies, Inc., and $1,438.88, representing one-half of the accretion to the husband's separate property, in the Royal Ice Cream Company. The judgment also gave her a one-half interest in an $18,000 promissory note owned by the husband, and in certain other property.

Mr. and Mrs. Elliott participated in a marriage ceremony at Las Vegas, Nevada, on December 8, 1950. Because of the invalidity of this marriage due to the wife's undissolved previous marriage, the parties remarried at Long Beach, California, on April 7, 1953. Plaintiff and defendant lived together, cohabited as spouses and conducted themselves as man and wife from and after December 8, 1950, to the date of the remarriage on April 7, 1953.

Separation of the parties occurred on November 18, 1953, some seven months after their remarriage on April 7, 1953, and was preceded by an altercation. Although the parties did not thereafter reside in the same home, the husband continued to visit the wife every week or so and have intercourse with her until after the filing of her complaint for divorce.

The trial court found that both parties had been guilty of extreme cruelty. In respect to the allegations in the husband's cross-complaint that the wife had abandoned him and had committed adultery, the trial judge found these charges not true.

The greater part of appellant's brief is concerned with the contention that the several findings of the trial court relating to the grounds for the wife's divorce and the status of certain property are not warranted by the evidence. To this end certain partisan references to the record have been made. This is particularly true in respect to the charge that the court erred in failing to find that the plaintiff and corespondent were guilty of adultery. It is quite true that the record reflects certain associations between Mrs. Elliott and the core-

spondent which might lead to a suspicion of improper intimacies, but it is also true that the wife offered evidence tending to negative such inferences. This, then, merely presents the usual picture of conflicting evidence which the trial court was called upon to evaluate.

The rule of appellate review in such cases had been reiterated countless times. The court in the divorce case of *Gideon* v. *Gideon,* 153 Cal.App.2d 541, said, at page 543 [314 P.2d 1011] : "These courts by constitutional mandate do not weigh conflicting evidence. The credit to be given to the testimony of any witness is solely for the trial tribunal. And this court has no power to disturb a finding of a trial judge if there is substantial evidence to support it. This rule applies to every kind of trial, criminal and civil." One quite obvious reason for the rule is that the trial judge is possessed of the opportunity to see and observe the witnesses and thus able to determine their credibility, whereas an appellate court has before it nothing more than a cold, printed record.

Viewing the evidence "most strongly favoring the respondent," as this court is compelled to do under the rule stated in *Stewart* v. *Stewart,* 130 Cal.App.2d 186, 195 [278 P.2d 441], the findings of the trial court must be deemed supported by substantial evidence. For example, in reference to several of the incidents claimed by appellant to establish the charge of adultery, plaintiff wife's evidence showed she and the corespondent had gone dining and dancing together some two years after the separation, in some cases with other friends. On one occasion when the wife and the corespondent were deemed to have been together, according to the husband, there was evidence that the corespondent was in Utah visiting his daughter and therefore could not have been with Mrs. Elliott. Both the corespondent and Mrs. Elliott denied any wrongdoing. From such evidence in the record it can readily be ascertained that there was a direct and material conflict which the trial court resolved in favor of the wife.

The same thing is true in respect to appellant's contention that the trial court erred in finding that plaintiff was a proper person to have custody of the children. This contention is based upon the assumption that the evidence established improper conduct on the part of Mrs. Elliott—a view which cannot be accepted on this appeal since there is substantial evidence supporting the contrary finding of the trial court.

■ While it is true that the best interests of the children are always of primary consideration, questions as to their custody "are matters within the sound discretion of the trial judge who has an opportunity to observe the parties and hear the evidence, and his decision should not be disturbed by an appellate tribunal unless it clearly appears that there has been an abuse of discretion." (*Ward* v. *Ward,* 150 Cal. App.2d 438, 442 [309 P.2d 965].)

■ The two young children whose custody is here involved, born February 1, 1952, and January 9, 1953, had resided with their mother continuously since birth and there was no evidence that they had not received good care. The trial court's decision granting custody to Mrs. Elliott cannot be deemed an abuse of discretion nor reversible error on any theory.

Appellant's remaining contentions relate to findings concerning community property and its division. The trial court was here confronted with a somewhat complicated financial situation involving substantial accretion to separate property owned by Mr. Elliott at the time of the first or putative marriage at Las Vegas in 1950. This separate property came to him largely as a result of a family arrangement, but was greatly increased during the putative marriage by Mr. Elliott's personal services, and thus acquired a community nature.

In respect to the various companies involved, it clearly appears from the record that the trial court gave due consideration to the evidence presented and arrived at a conclusion adequately supported by substantial evidence. The rule of appellate review hereinbefore referred to must again be applied with the result that this court will not disturb the findings. This opinion might well end with the general application of this rule; nevertheless, the specific contentions of appellant will be noted.

The trial court found that the parties had "in good faith, lived together and cohabited as spouses and conducted themselves as man and wife from December 8, 1950," the date of the putative Nevada marriage, to the date of the remarriage on April 7, 1953. ■ In respect to the community property of the parties, the court then dealt with the matter as though there had been no impediment to such marriage. This was proper in view of authorities such as *Lazzarevich* v. *Lazzarevich,* 88 Cal.App.2d 708, 714 [200 P.2d 49], holding that in such cases "a de facto spouse is entitled to the rights accorded a lawful spouse in the property acquired during the de facto marriage."

 Shrimp Processors Company was a partnership organized in 1951 after the first or putative marriage, Mr. Elliott's father furnishing the necessary money for this venture with an agreement to be later reimbursed out of profits of the business. As to appellant's one-third interest, a certified public accountant confirmed the fact that the value of this interest was derived from his accumulated commissions converted into a capital investment. In other words, by reason of appellant's services during the marriage, this interest had been built up and created and thus became community property. The trial court's finding to this effect is adequately supported by the evidence.

 Closely related to the Shrimp Processors matter is the A & E Beverage Company, a partnership formed in 1955 in which appellant owned a one-half interest. This enterprise appears to have been started with $25,000 capital borrowed from the Shrimp Processors Company. Mr. Elliott again invested nothing more than his time and effort; he testified that he generally worked six or seven days per week. It was claimed by appellant that both Shrimp Processors and A & E Beverage Company interests were acquired by credit advanced on reliance of his separate property and therefore were separate property. This theory quite evidently was not accepted by the trial court and the finding to the effect that these were community property interests is well supported by substantial evidence and legitimate inferences therefrom.

 Moreover, as stated in *Gudelj* v. *Gudelj*, 41 Cal.2d 202, 210 [259 P.2d 656], "There is a rebuttable presumption that property acquired on credit during marriage is community property. . . . In the absence of evidence tending to prove that the seller primarily relied upon the purchaser's separate property in extending credit, the trial court must find in accordance with the presumption."

Appellant's interest in these and other enterprises formed a part of certain complicated family dealings and interlocking devices, the precise nature of which was difficult of ascertainment. For example, there was evidence which would support the inference that one company may have been fattened at the expense of another by reason of unusual discounts or otherwise, the net result of which would be a reduction of the community interest.

Also to be noted is appellant's claim that the trial court ignored alleged losses in respect to certain other enterprises known as Signal Distributing Company, Royal Ice Cream

Company and Chapman-Hill Ice Cream Company, which losses would tend to materially reduce the profits earned by MacLean's Frozen Pies.

Again, these matters involve questions of fact. Mr. Elliott was sales manager for MacLean's Frozen Pies. There is evidence that in December, 1952, his one-third interest in this company was worth $6,507.09, and that in December, 1955, this same interest was valued at $22,798.04. The trial court allowed appellant a 6 per cent return on his separate property figure of $6,507.09, and found the balance of his interest to be community property.

There is no indication that the trial court ignored any of the contentions made. On the contrary, it had before it, and duly considered all the various conflicting items of evidence pertaining to such matters and after a full presentation by briefs and otherwise, took the entire matter under submission and arrived at the conclusions evidenced by the findings and judgment. In so doing, the trial court was performing its normal and proper function of weighing the evidence and determining the credibility of the witnesses. From the record it is obvious that the conclusions reached by the trial judge are adequately supported by the evidence.

What has already been said applies with equal force to other property items such as the award to the wife of a one-half interest in an $18,000 promissory note executed by Ralph J. Cover in favor of the appellant husband. This, once more, represents one of the family transactions connected with MacLean's Frozen Pies and Shrimp Processors, the net effect of which was to reduce the value of the community property estate. The trial court was entitled to draw reasonable inferences from the evidence adverse to the appellant's contentions and did so. It was certainly in a better position to determine this abstruse controversy than any appellate court could possibly be.

■ Nor is there merit to the contention that the court erred in awarding alimony to the plaintiff. The broad latitude of authority and discretion in such matters is recognized in both statutory and case law. Under section 139 of the Civil Code the trial court is empowered "to make such suitable allowance for support and maintenance . . . as the court may deem just." In view of the evidence as to Mr. Elliott's earnings and income from various sources, and the necessities of the wife who was not in a position to secure gainful employment because of a health situation, as well as the requirements

of the children, the award of $200 per month as alimony cannot be deemed to constitute an abuse of discretion. ██ Apropos this matter, it may be noted that the trial court could properly consider not only the husband's actual earnings, but also his ability to earn money. (*Webber* v. *Webber*, 33 Cal.2d 153, 160 [199 P.2d 934].)

The record discloses abundant evidentiary support for the findings and judgment of the trial court, that appellant has been accorded a full and fair trial of all pertinent issues and that no reversible error has been committed.

The judgment is affirmed.

White, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied August 18, 1958, and appellant's petition for a hearing by the Supreme Court was denied September 24, 1958. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.