[Civ. No. 37974. Second Dist., Div. One. Aug. 6, 1971.]

CATHERINE FRANCES PHILBIN, Plaintiff and Appellant, v.
REGIS FRANCIS PHILBIN, Defendant and Respondent.

## COUNSEL

Julian S. Gould for Plaintiff and Appellant.

Marvin M. Mitchelson and Michael L. Abrams for Defendant and Respondent.

## OPINION

**LILLIE, J.**—On August 23, 1968, petitioner sued respondent for a divorce; on January 21, 1969, an interlocutory judgment of divorce approving property settlement agreement dated December 15, 1968, part of which was specifically incorporated therein, was entered. The final judgment was entered August 27, 1969. Pertinent here, the agreement and hence the judgment provides for the payment by respondent to petitioner of a lump sum of $1,100 per month for her own support and maintenance and that of the minor child Amy, and the sum of $200 per month for the support and maintenance of the minor Daniel. Under the agreement there was an equal division of community property resulting in approximately $28,000 to each party.

On August 20, 1970, respondent filed order to show cause for a modification of spousal and child support. After a hearing the court on September 22, 1970, modified the interlocutory and final judgments by reducing child support to $150 per month per child ($300 per month) and spousal support to $250, or a total of $550 per month for a period of six months commencing October 1, 1970, and continuing until April 1, 1971, at which time spousal and child support payments shall revert back to those sums

ordered in the interlocutory judgment ($1,100 plus $200 per month) subject to further order of court; and ordered payment to petitioner's attorney of the sum of $350 in monthly installments of $35.

As the result of petitioner's motion for reconsideration, the court on October 6, 1970, ordered[1] that in addition to the order of September 22, 1970, respondent pay petitioner $350 per month to assist her in making payments on her home commencing October 15, 1970, and continuing until April 1, 1971, at which time he shall be entitled to credit the amounts thus paid her on the monthly payment made on April 1, 1971, and thereafter at the rate of $350 per month until the entire amount is credited.

Petitioner appeals from the orders of September 22, 1970, and October 6, 1970. She does not deny the lower court's power to modify the original order but questions the discretion exercised by the court in doing so.

The evidence shows that around the first of 1969 petitioner received an equal division of the community property amounting to some $28,000 with which subsequently she made a $15,000 down payment on a home and invested $9,000 in a business venture which she lost although a portion thereof ($3,300) was recovered on an insurance claim. She testified that now her assets consist only of the $15,000 equity in her home and other property valued at $1,500, and that she has had no income other than the monthly support payments ($1,300) she regularly received from defendant. She claims poor health and testified she underwent surgery 10 months before the hearing; she described the nature of her illness as a nervous condition. She was an actress, appeared with respondent on his television show in San Diego and has made commercials. She has not engaged an agent and while she claims her nervous condition would not permit her to work as an actress, she says she could do commercials. She listed her necessary monthly expenses as $1,527.

It is undisputed that at the time the parties executed the property settlement agreement (1968) respondent's gross annual income was $55,000; when the interlocutory and final judgments were entered (1969) it was $95,000 ($55,000 under contract of employment on the Joey Bishop show,

[1] "The Court is concerned as to whether it is reasonable for the petitioner to maintain her home based on the present situation of the parties; however, the Court finds that it is reasonable to expect the respondent to resume his former financial situation in the near future therefore the motion for reconsideration is granted in the following particulars. In addition to the order of September 22, 1970, the respondent is ordered to pay to the petitioner $350.00 per month payable one-half on the 1st and one-half on the 15th of each month commencing October 15, 1970, to assist her in making the payments on her home until April 1, 1971, at which time he will be entitled to credit the amounts paid her pursuant to this order on the monthly payment made on April 1st and thereafter at the rate of $350.00 per month until the entire amount expended for this purpose is credited."

and $40,000 for outside television appearances); and when the instant order was made reducing support payments (1970) his gross annual income was $27,000 ($24,000 under a contract with KHJ-TV and $2,000 or $3,000 earned from other employment). Respondent has approximately $28,000 in a savings account (his half of the divorce settlement) and $25,000 invested in mutual funds (which he saved in 1969). He is engaged in the entertainment field in which few have the fixed annual income most other professions enjoy, and employed by KHJ-TV under a 13-week exclusive contract "for Los Angeles television" from Monday through Friday for $2,000 gross salary per month; his monthly net income after deductions is $1,296.40. Respondent is remarried and his wife is not working; to Angel View Crippled Children's Foundation he is making payments of $200 per month and owes it a balance of $6,593.25 for care of Daniel; he expects some kind of income tax refund as a result of medical payments made for Daniel. His listed monthly expenses are $995.

■ Whether a modification is warranted depends upon the facts and circumstances of each case, and its propriety rests in the sound discretion of the trial court the exercise of which this court will not disturb unless as a matter of law an abuse of discretion is shown. (*Dean* v. *Dean,* 59 Cal.2d 655, 657 [31 Cal.Rptr. 64, 381 P.2d 944]; *Bratnober* v. *Bratnober,* 48 Cal.2d 259, 261-262 [309 P.2d 441]; *Kornblatt* v. *Kornblatt,* 9 Cal.App.3d 619, 625 [88 Cal.Rptr. 438].) Any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court. (*Primm* v. *Primm,* 46 Cal.2d 690, 693-694 [299 P.2d 231]; *Leupe* v. *Leupe,* 21 Cal.2d 145, 152 [130 P.2d 697].)

■ The general rule is that in any later modification proceeding the evidence must show a material change of circumstances subsequent to the last prior order. (*Hester* v. *Hester,* 2 Cal.App.3d 1091, 1095 [82 Cal.Rptr. 811]; *Engelberg* v. *Engelberg,* 257 Cal.App.2d 821, 824 [65 Cal.Rptr. 269].) ■ It cannot be denied that a material change has occurred in respondent's annual income; as compared with $55,000 in 1968 and $95,000 in 1969, in 1970, through no fault of respondent, it was reduced to $27,000. In addition, respondent has remarried. ■ While this alone does not justify reduction, the husband's remarriage with its additional burdens is nevertheless a factor to be considered. (*Reed* v. *Reed,* 128 Cal.App.2d 786, 792 [276 P.2d 36].) ■ In any event, the basic consideration of the trial court is the needs of the dependents and the ability of the husband to meet those needs. (*Baron* v. *Baron,* 9 Cal.App.3d 933, 943 [88 Cal.Rptr. 404].)

■ The result of the orders of September 22, 1970, and October

6, 1970, is that commencing October 1, 1970, respondent will pay $550 per month for the support of petitioner and the minors for six months and loan her $350 per month for said period to be repaid by her during the subsequent six months by allowing respondent to credit said monthly sum to his regular support payments of $1,300 which will be restored April 1, 1971. Thus, for six months respondent will pay out of his monthly salary of $1,296.40, $550 to petitioner, and at the expiration of the six-month period will resume payment of $1,300 which, if his option is renewed at the same salary, will amount to $3.60 more per month than he will make leaving him nothing but his savings on which to live. Appellant argues that in ordering respondent to loan her $350 per month for the six-month period and her to repay said sum over the subsequent six-month period, the court concluded that the $550 per month was inadequate and that respondent had the ability to pay more. There is no question but that the amount ordered for spousal and child support is considerably less than that claimed by petitioner to be her necessary monthly expenses, and that the amount of income remaining for living expenses of respondent and his family is much less than his listed monthly expenses, but for whatever additional he needs for his own support he must resort to his savings. It appears that the court below in fixing the amount of support for petitioner and the minors considered the nature of respondent's work and its uncertainties and was unwilling to require respondent, while still employed, to further deplete his savings which consist primarily of the $28,000 he received in settlement at the time of the divorce and prudently conserved. Obviously the loan of $350 per month for the six-month period was meant to come from respondent's savings and it is that money petitioner is ordered to repay. In contrast with respondent's preservation of his part of the community property, petitioner apparently did little to conserve the monies she received; she elected to make a $15,000 down payment on a house and an investment of $9,000 which she lost. Petitioner is now burdened with monthly mortgage payments of $447 on the house, and while she cannot necessarily be faulted for the purchase of the home in the light of her custody of the two minors, nevertheless the court below may be justified in its concern, recited in the order of October 6, 1970, "as to whether it is reasonable for the petitioner to maintain her home based on the present situation of the parties." Respondent's income is derived solely from the entertainment industry which he testified "seems to be a bit depressed this year." Income in this field fluctuates considerably from year to year and a change in respondent's standard of living may well be in the offing; this applies as well to petitioner and the minors unless she is willing, despite her asserted nervous condition, to obtain employment.

Based on *Pencovic* v. *Pencovic,* 45 Cal.2d 97, 100 [287 P.2d 501],

and *Baron* v. *Baron,* 9 Cal.App.3d 933, 943 [88 Cal.Rptr. 404], appellant argues that the court should have denied modification because its orders need not be based upon actual income or property of the husband but upon his ability to earn money. ■ While it is true that an award of alimony and child support may be based upon the husband's ability to earn as distinguished from his actual income, the rule seems to be applied only when it appears from the record that there is a deliberate attempt on the part of the husband to avoid his financial family responsibilities by refusing to seek or accept gainful employment (*Pencovic* v. *Pencovic, supra,* 45 Cal.2d 97, 101-102), wilfully refusing to secure or take a job (*Webber* v. *Webber,* 33 Cal.2d 153, 160 [199 P.2d 934]; *Tompkins* v. *Tompkins,* 83 Cal.App.2d 71, 79 [187 P.2d 840]), deliberately not applying himself to his business (*Clark* v. *Clark,* 193 Cal.App.2d 565, 566 [14 Cal.Rptr. 419]), intentionally depressing his income to an artificial low (*Elliott* v. *Elliott,* 162 Cal.App.2d 350, 355-356 [328 P.2d 291]; *Estes* v. *Estes,* 158 Cal.App.2d 94, 97 [322 P.2d 238]), or intentionally leaving his employment to go into another business (*Baron* v. *Baron,* 9 Cal.App.3d 933, 941-942 [88 Cal.Rptr. 404]). ■ Here respondent's financial situation is limited by the very nature of the business by which he earns his living; few in the entertainment field, with the exception of those with star status, are able to sustain high incomes. It cannot be said that respondent has done anything to depress his income or has deliberately left one employment to go into another; the record shows that the unavailability of television employment out of Los Angeles is the direct result of his work under a contract that guarantees him $2,000 monthly gross income during its term.

Under the circumstances here appellant has established no abuse of discretion in the reduction of alimony and support payments. ■ However, an issue which has not been discussed in the briefs lies in the limitation of the reduced support payments to six months after which the original $1,300 per month shall be restored. If the record supports such limitation, of course an order of this kind is proper, but the restoration of the original payments in six months is here based on a finding of a reasonable expectation that in the near future respondent's finances will rise to their former level ($55,000 in 1968, $95,000 in 1969), wholly unsupported by the evidence. Implicit in the order of September 22, 1970, and specifically recited in the order of October 6, 1970, is the finding "that it is reasonable to expect the respondent to resume his former financial situation in the near future." Nothing in the record supports this finding; nothing gives hope that respondent's efforts will yield more income in the near future or by April 1, 1971. To the contrary, it shows that his contract has only six weeks to run with no job offer in the future. His employment

status is undisputed. Hired by KHJ-TV under a 13-week contract, respondent at the time of the hearing had six more weeks employment thereunder; the contract had three additional 13-week options (for what salary the record is silent) which had not been exercised by the employer and the evidence reflects no expectation that it will do so; it is an exclusive contract "for Los Angeles television" Monday through Friday; his agent has been unable to secure other employment for him while under the contract and he has performed no outside television engagements, although he earned $2,000 or $3,000 from other employment; his contract permits him to take television or other employment outside of Los Angeles with the approval of KHJ but inasmuch as its terms require him to work Monday through Friday, he cannot take television engagements out of town or one-night stands. Respondent has had no job offers for the future. Respondent testified, and it is not denied, that this year the industry is depressed. His high peak earning of 1969 was due to a $55,000 contract for employment on the Joey Bishop show and $40,000 he was able to earn from outside television appearances. The latter sum was explained by him thus, "When you are on national television you do get more offers than when you are not." Because now he appears on a local station and for the reasons hereinabove set forth, it is not likely under his present contract that defendant will be able to supplement his income. It may well be that in fact KHJ-TV has exercised the options under the contract and defendant is now earning more than at the time of the hearing, through increased salary under the contract itself and/or other employment, but nothing in the record before us reflects even an anticipation of such. Even so, the court cannot anticipate what may possibly happen in the future or provide for future contingencies in making an order but is limited to the facts and circumstances existing at the time the same is made. This court said in *Miller* v. *Miller,* 11 Cal.App.3d 197, at pages 200-201 [89 Cal.Rptr. 643]: "As pointed out in a case cited by plaintiff, *Engelberg* v. *Engelberg,* 257 Cal.App.2d 821, 824 [65 Cal.Rptr. 269], the court in proceedings of this nature is not concerned with 'merely a possibility which had not, and might not, occur.' *Engelberg* also quotes the following (fn. 2, p. 825) from an early case which is here pertinent: 'But the power to make such orders must be held to be limited to the conditions and circumstances existing at the time they are made. The court cannot then anticipate what may possibly thereafter happen, and provide for the future contingencies.' (*Schammel* v. *Schammel,* 105 Cal. 258, 261 [38 P. 729].)" In the absence of anything in the record to support a "reasonable" expectation that respondent will resume his former financial situation in the near future, the termination of the reduced support payments on April 1, 1971, is predicated on the grossest kind of speculation. While there appears to be no abuse of discretion in the reduction of support payments, we conclude

for the foregoing reasons that the court abused its discretion in ordering the restoration of the original payments on April 1, 1971.

Thus, we amend the orders of September 22, 1970, and October 6, 1970, insofar as they relate to a limitation of reduction of spousal and child support and respondent's loan of $350 per month to petitioner to April 1, 1971. The minute order of September 22, 1970 (as corrected *nunc pro tunc* in minute order of October 6, 1970), appearing on page 22 of the clerk's transcript, is hereby amended by deleting therefrom, after the word "until" on line 11 and before the word "further" on line 13, the following: "April 1, 1971, when child support payment shall revert back to those sums ordered in the Interlocutory Judgment subject to," and by deleting after the word "until" on line 16 and before the word "further" on line 18, the following: "April 1, 1971, when support for the petitioner shall revert to the sums ordered in the Interlocutory Judgment subject to";[2] and minute order of October 6, 1970, appearing on page 27 of the clerk's transcript, is amended by deleting therefrom after the word "until" and before the word "at" on line 25, the following: "April 1, 1971," and in place thereof adding the words "further order of Court," by adding after the word "the" at the end of line 26 and before the word "monthly" at the beginning of line 27, the word "first," and by deleting after the word "made" and before the word "at" on line 27, the following: "On April 1st and thereafter" and in place thereof adding the words, "thereafter and continuing."[3] The orders as amended are affirmed.

Wood, P. J., and Thompson, J., concurred.

---

[2]That portion of the minute order of September 22, 1970, as herein amended, shall read: "The respondent is ordered to pay to the petitioner as and for child support the sum of $150.00 per month per child, a total of $300.00 per month payable one-half on the 1st and one-half on the 15th of each month commencing October 1, 1970, and continuing thereafter until further order of the Court. The respondent is ordered to pay to the petitioner as and for her support the sum of $250.00 per month payable one-half on the 1st and one-half on the 15th of each month commencing October 1, 1970, and continuing thereafter until further order of the Court."

[3]That portion of the minute order of October 6, 1970, as herein amended, shall read: "In addition to the order of September 22, 1970, the respondent is ordered to pay to the petitioner $350.00 per month payable one-half on the 1st and one-half on the 15th of each month commencing October 15, 1970, to assist her in making the payments on her home until further order of Court at which time he will be entitled to credit the amounts paid her pursuant to this order on the first monthly payment made thereafter and continuing at the rate of $350.00 per month until the entire amount expended for this purpose is credited."