[Civ. No. 61024. Second Dist., Div. Five. Dec. 3, 1981.]

In re the Marriage of PATRICIA and RONALD T. HURTIENNE.
RONALD T. HURTIENNE, Appellant, v.
PATRICIA HURTIENNE, Respondent.

COUNSEL

Irsfeld, Irsfeld & Younger, James J. Waldorf and Michael R. Younger for Appellant.

Richard N. Deyo for Respondent.

OPINION

HASTINGS, J.—This is an appeal by Ronald T. Hurtienne (Ronald) from an interlocutory judgment of dissolution of marriage dissolving a marriage of approximately 28 years to Patricia Hurtienne (Patricia).

Ronald, who was unemployed through no fault of his own at the date of trial, appeals the award of spousal support to Patricia based solely on his ability to earn. He also challenges an option given by the court to Patricia to purchase the community residence at a future date without provision for appreciation, and distribution of assets at values that he claims are unsupported by the evidence.

There were two grown children of the marriage. The community property of the parties included (1) a family residence located in Norwalk, California, stipulated to have a net fair market value of $60,000 at time of trial; (2) a leasehold interest in a cabin located in Saugus, California, the value of which was disputed; (3) a pension plan with Rockwell International, fully vested, entitling Ronald to benefits depending upon his date of retirement, between age 55 and 65;[1] and (4) other miscellaneous assets not involved in this appeal.

Ronald had been discharged the Friday prior to trial by Rockwell International where he had been a training quality control engineer. He was earning at time of discharge a gross salary of $2,146 per month. The termination was due to a reduction in personnel.

### THE SPOUSAL SUPPORT ISSUE

The interlocutory decree ordered Ronald to pay spousal support of $400 per month commencing on April 1, 1980. Included in the award was the following provision: "Petitioner having been terminated from his long-term employment by Rockwell on January 18, 1980, without cause on the part of petitioner, the previous temporary order is in effect only through the spousal support installment payable on February 15, 1980." Prior to trial, the court had ordered pendente lite spousal support in the sum of $375 per month.[2] The court handed down its memorandum of intended decision on February 14, 1980, and it contained the quoted provision. The interlocutory decree was signed on April 28, 1980.

No reason is given by the court for the 30-day pause in spousal support. We assume that the court, through its intended decision of

---

[1]Ronald was 53 at time of trial and had no income from the pension plan.

[2]This sum was payable in two (2) equal installments every month. The February 15th payment would cover 15 days. No spousal support was ordered for the month of March.

February 14, 1980, was impliedly informing Ronald that he had 30 days to obtain employment, thus justifying the $400 award order.[3]

 Ronald argues that the spousal support award based solely on his ability to earn rather than on his actual income when he was discharged through no fault of his own, was error. He relies on *Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 121 [96 Cal.Rptr. 408], where the court stated: "While it is true that an award of alimony and child support may be based upon the husband's ability to earn as distinguished from his actual income, the rule seems to be applied only when it appears from the record that there is a deliberate attempt on the part of the husband to avoid his financial family responsibilities by refusing to seek or accept gainful employment [citation], wilfully refusing to secure or take a job [citations], deliberately not applying himself to his business [citation], intentionally depressing his income to an artificial low [citations], or intentionally leaving his employment to go into another business [citation]."

Although we are convinced that the *Philbin* rule is the law today, it is still argued by some, including Patricia, that it is not the final word on the issue and that the court in some instances may base an award of spousal support solely on the paying spouse's ability to earn. Usually cited in support of this argument is a comment by Justice Tobriner in *Meagher* v. *Meagher* (1961) 190 Cal.App.2d 62 [11 Cal.Rptr. 650], where in writing the opinion for the court he stated: "Yet the cases have frequently and uniformly held that the court may base its decision on the husband's ability to earn, rather than his current earnings. If the court were limited to the momentary current earnings of a husband, particularly one who was engaged in a seasonal industry or whose earnings had widely fluctuated, the court would get a distorted view of his financial potential." (190 Cal.App.2d at p. 64.)

When viewed in the proper context of the *Meagher* case we are satisfied Justice Tobriner's statement is consistent with the law as enunciated in *Philbin*. After noting that the husband in *Meagher* had quit a well-paying job in a family-owned corporation immediately after the separation of the parties for a much lower paying job, the opinion states: "He apparently terminated his favorable association with that

---

[3]There is nothing in the record to suggest that Ronald had other income that could be tapped to pay the award. This opinion applies only to a situation where spousal support payments can be met by the wages of the paying spouse.

corporation at the very time he deserted his family and sought to shed his family responsibilities. In view of those facts the trial court could properly conclude that the 'potential of this man' and his apparent 'substantial interest' in the family corporation indicated his ability to meet the awarded payments. The court could evaluate the peculiar coincidence of salary reduction in the family-owned firm and the marital separation." (190 Cal.App.2d at pp. 63-64.) It thus appears that, in supporting the trial court's award of spousal support, the *Meagher* opinion took into consideration the husband's own voluntary course of conduct that reduced his apparent ability to meet his financial family responsibilities. In such a situation the court is not in error in applying the ability to earn standard.

Subsequent cases have relied upon *Philbin*, namely, *In re Marriage of Reese* (1977) 73 Cal.App.3d 120 [140 Cal.Rptr. 589], and *In re Marriage of Rome* (1980) 109 Cal.App.3d 961 [167 Cal.Rptr. 351]. In *Reese*, the court applied the rule to child support. Husband, a musician, was averaging only $250 a month and the court noted that there was no evidence to show that he was seeking to avoid his family responsibility. Evidence disclosed that his earning power was limited by economic problems facing the entertainment field at that time. The award of $195 per month child support from an average salary of $250 per month was held to be an abuse of discretion without a showing that he was intentionally trying to avoid his family responsibilities.

We see a different twist to the rule in *In re Marriage of Rome, supra*. The appellate court reversed a reduction of spousal support because the trial court had not permitted the wife to invoke the *Philbin* rule. The trial court had accepted at face value the husband's explanations as to why he was not working. The wife had requested the court to continue the matter for 90 days so that the parties would have a clearer picture of the husband's employment situation. Her request was denied. The opinion held that the court should have granted the 90-day extension so that evidence of husband's good or bad intentions could be more easily determined. In other words, had wife been able to establish that husband was seeking to avoid his financial responsibilities, the reduction of the award from $1,000 a month to $100 a month would have been an abuse of discretion.

In our present case, a realistic approach to the problem would have been similar to that suggested in *Rome*. The trial court should have determined all of the other issues involved in the dissolution pro-

ceeding and then continued the issue of spousal support for 90 days or any other reasonable time to permit the facts concerning Ronald's good faith attempt to find employment to materialize. The court perhaps thought it was doing this when it gave Ronald 30 days of suspended payments before the $400 per month spousal support commenced. However, we do not believe this delay was realistic under the facts of this case. Ronald received notice of the court's intentions only through its memorandum of intended decision. If Ronald, acting in good faith, had not found employment in 30 days, the spousal support automatically commenced even though Ronald had no other income to pay the award. The better approach would have been to make no spousal support award and to order the parties back for a *Philbin* hearing.

### Division of the Community Property

(1) The trial court placed the family residence in tenancy in common. The judgment then provided: "Respondent (Patricia) is granted an option to purchase the interest of petitioner (Ronald) therein . . . payable in full without interest on or before September 1, 1981. The forebearance of immediate receipt of said sum by petitioner, and the denial of interest on the deferred payment thereof, is ordered by way of additional spousal support payable by petitioner to respondent." ■ Ronald's objection is the delayed option given to Patricia by this provision. He claims that since real property is increasing at a rate that far exceeds the increase in the general cost of living, Patricia has an additional monetary benefit which results in an unequal division of the community property as of the date of judgment. Ronald has overlooked the fact that the denial of interest on the deferred payment was ordered as additional spousal support. There was testimony that Patricia would have had to pay rent of approximately $400 to $450 per month if she did not have the home to live in. There was evidence that she could live more economically in the home than she could if she rented. In view of Ronald's inability to pay spousal support because of his unemployment, the court did not err as a matter of law in permitting a portion of spousal support to be paid in such a manner. Although earlier in this opinion we reversed the $400 per month portion of the spousal support award for the reasons stated, we conclude this form of partial spousal support award was permissible. This portion of the order will not work the hardship on Ronald that the cash award would do if he remained unemployed. We are satisfied under the facts of this case that there was a sufficient economic interest involved that supports this portion of the court's order.

(2) ██ Ronald next maintains that the award of the fully vested pension, owed him by Rockwell International, was uncertain. In this contention, he is correct. The court provided that Patricia could apply her interest of $8,193.50 towards the purchase price of the family residence should she elect to exercise the option. If, however, she did not elect to purchase the family residence, the interlocutory decree provides that the property would be sold and the proceeds divided in proportions necessary to equalize the distribution of the community property after taking into consideration reimbursements for taxes, mortgage payments, etc., as provided in *In re Marriage of Epstein* (1979) 24 Cal.3d 76 [154 Cal.Rptr. 413, 592 P.2d 1165]. It would appear that the court meant to award the entire retirement to Ronald and offset this with other assets to Patricia, but this is only clear if Patricia exercises the option to purchase the family residence. The interlocutory decree is silent concerning the pension fund if Patricia does not purchase the property. On remand, this oversight can easily be corrected

(3) ██ Ronald's final argument is that the trial court arbitrarily placed a value of $15,000 on the leasehold interest in the cabin in Bouquet Canyon, and $2,000 on the 1972 Dodge pickup truck. This is incorrect. There was conflicting testimony on the cabin's value. The high valuation was $22,500 and the low valuation was $10,000. Under these facts the court's valuation was not in error. The same reasoning applies to the value placed on the Dodge pickup truck. It was purchased for $4,800 and the court disbelieved Ronald's testimony that it was worth only $1,000.

The judgment concerning the spousal support is reversed. On remand, the court shall modify the judgment concerning Ronald's retirement fund. In all other respects, the judgment is affirmed. Both parties to stand their own costs of appeal.

Stephens, Acting P. J., and Ashby, J., concurred.