[Civ. No. 69840. Second Dist., Div. Seven. Apr. 30, 1984.]

In re the Marriage of KAROLYN JAN and
JAMES TIMOTHY WILLIAMS.
KAROLYN JAN WILLIAMS, Appellant, v.
JAMES TIMOTHY WILLIAMS, Respondent.

**[Opinion certified for partial publication.†]**

†This opinion is certified for partial publication pursuant to rules 976 and 976.1 of the California Rules of Court. The published portions of this opinion consist of the opening two paragraphs, the statement of facts (section I) and sections II and III.

58

---

**COUNSEL**

Piantadosi & Bagby and Richard N. Piantadosi for Appellant.

John P. Foley for Respondent.

OPINION

**JOHNSON, J.**—This is an appeal from an order modifying the child support award of an interlocutory judgment originally entered in 1977. Appellant, Mrs. Williams, claiming changed circumstances, sought to increase the amount of monthly support for the parties' two children from $300 to $600. She also sought $1,000 in attorney's fees. The trial court granted both requests in reduced amounts. It increased the amount of monthly child support to $400 and awarded $300 in fees.

Mrs. Williams appeals both orders as abuses of discretion. With respect to the order awarding attorney's fees, we find no abuse. With respect to the amount of child support awarded, Mrs. Williams argues the trial court abused its discretion: (1) by failing to consider Mr. Williams' ability to earn as distinguished from his current financial circumstances; and (2) by failing to consider Mr. Williams' second wife's ability to earn as distinguished from her current unemployed status. We consider these arguments in the published portion of this opinion. ▮ We hold since there was no evidence Mr. Williams was attempting to avoid his obligations to his children, the trial court properly considered his actual earnings rather than his ability to earn. ▮ We also hold that although a child support order may be based upon the supporting spouse and his new spouse's combined ability to pay, the determination of the new spouse's contribution must be based on her actual earnings and not on her ability to earn.

I. *Statement of Facts and Proceedings Below*

Upon dissolution of their eight-year marriage, custody of the parties' two children, Jennifer, then eight years old, and Lena, then four years old, was awarded to Mrs. Williams. Mr. Williams was ordered to pay $300 per month child support for both children.

On August 19, 1980, Mrs. Williams, claiming changed circumstances, filed an order to show cause seeking to increase the child support for the two children from $300 to $600 per month. The assertion of changed circumstances was based on an increase in Mr. Williams' income and expenses. Mr. Williams' expenses increased from $1,270 in August 1976 to $2,332 in September 1980. His net income increased from $685 in August 1976 to $2,360.50 in September 1980. One of the main reasons for these increases was Mr. Williams had remarried and his second wife, Christine Williams' income was included in his total income.[1]

---

[1]Christine Williams was employed by TRW and records supplied by the employer reveal her monthly net earnings in 1980 were $1,182.50.

Mrs. Williams also claimed since their divorce Mr. Williams had acquired the following assets: a duplex in Los Angeles; a commercial building in Los Angeles; a home in Redondo Beach; an undivided one-fourth interest in a parcel of land; two cars; and one truck. Some of these assets were purchased from Mr. Williams' portion of the community property settlement.

Mr. Williams' testimony at the modification hearing substantiated the income and expense data submitted by Mrs. Williams in her order to show cause. However, his uncontradicted testimony at trial reflected another change in circumstances which had occurred ten months after Mrs. Williams filed her order to show cause and just two weeks before the hearing.

Mr. Williams testified both he and his second wife had voluntarily quit their jobs and moved to Reno, Nevada. They moved to Nevada because the cost of living in California was too high. In preparation for the move, Mr. Williams sold two assets: his personal residence and the commercial building. From the sale of his home Mr. Williams received $17,000 cash and a five-year $10,000 secured note payable at $100 per month. From the sale of the commercial building Mr. Williams received $6,200 cash and a 10-year $49,000 secured note payable at $500 per month.

Thus, within the four-month period immediately preceding the April 1981 hearing Mr. Williams increased his cash position by $23,200[2] and obtained negotiable notes valued at $59,000. But as a result of moving to Reno his monthly income from salaries had been reduced to zero.

At the conclusion of the hearing, the trial court put the matter over for two months and requested all parties file financial declarations.[3]

At the second hearing on June 1, 1981, Mr. Williams testified he found a job in Reno paying a gross monthly salary of $1,100. His second wife was pregnant and not seeking employment. The net monthly income available to Mr. Williams, including the income from the two notes, was $1,144 compared with stated monthly expenses of $2,299. The only remaining real property owned by Mr. Williams was the duplex in Los Angeles worth between $55,000 and $60,000, with $24,000 still owing on the mortgage.

At the hearing, Mrs. Williams represented her monthly income as $460.[4] Because the veracity of this representation was challenged she also

---

[2]Mr. Williams testified he used the money to pay off various bills and had $8,000 left from the $23,200.

[3]Apparently Mr. Williams complied with this request, although no revised financial declaration appears in the record on appeal. Mrs. Williams evidently did not comply.

[4]The record does not contain a statement of Mrs. Williams' personal expenses. The only monthly expenditure to which she testified was a home mortgage payment of $430.

submitted a declaration in which she explained the source of deposits she made into two bank accounts. The first account was a business account.[5] The deposits into this account totalled $10,609.41 for the first nine months of 1980. Mrs. Williams' second account was a personal checking account. She deposited $12,854.63 in this account during the first nine months of 1980.

However, in response to cross-examination, Mrs. Williams testified that between September 1979 and October 1980, representing a full year of deposits rather than only nine months, deposits in her personal account totalled $22,000 and deposits in her business account totalled $17,242.

At the conclusion of the hearing the trial court did modify the previous order by increasing the amount of monthly child support from $300 to $400 for both children. The $100 increase in support was made retroactive for six months. The court also ordered Mr. Williams to pay $300 of the $1,000 in attorney's fees requested. The trial court issued no findings of fact. Nor did the court state reasons for its decision on the record.

Mrs. Williams filed a timely notice of appeal, arguing the court abused its discretion in making both orders.

In the unpublished portion of this opinion, we render the following decisions. First, since Mrs. Williams had the resources to maintain the action the court's decision ordering Mr. Williams to pay $300 in attorney's fees as his contributive share was a proper exercise of discretion. Second, the amount of child support awarded was not an abuse of discretion in light of the reduction in Mr. Williams' monthly income and Mrs. Williams' failure to establish she needed more money. Mrs. Williams' final contentions that the ability to earn standard should be imposed on Mr. Williams and also on his present wife Christine is considered in the published portion of this opinion.

*The Amount of Child Support Awarded Was Not an Abuse of Discretion.*

. . . . . . . . . . . . . . . . . . . . . . . . . .

II. Since There Was No Evidence Mr. Williams Was Attempting to Shirk His Responsibility to His Children, the Court Properly Considered His Actual Earnings Rather Than His Ability to Earn.

Despite Mrs. Williams' failure to offer any evidence she or her children needed more money she argues the trial court abused its discretion by failing

---

[5]Mrs. Williams sews quilts and sells them at her own small retail store.

*See footnote, *ante,* page 57.

to consider Mr. Williams' and his current wife's ability to earn as distinguished from their actual earnings. According to Mrs. Williams, her former husband's income before he moved to Reno is the relevant figure for determining whether his financial circumstances compel an order for increased child support.

In making this argument Mrs. Williams relies on *Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115 [96 Cal.Rptr. 408]. There the court explained the circumstances under which a court may impose support obligations based on the supporting spouse's ability to earn rather than his actual income: "While it is true that an award of alimony and child support may be based upon the husband's ability to earn as distinguished from his actual income, the rule seems to be applied only when it appears from the record that there is a deliberate attempt on the part of the husband to avoid his financial family responsibilities by refusing to seek or accept gainful employment (*Pencovic* v. *Pencovic* [1955] 45 Cal.2d 97, 101-102 [287 P.2d 501]), wilfully refusing to secure or take a job (*Webber* v. *Webber* [1948] 33 Cal.2d 153, 160 [199 P.2d 934]; *Tompkins* v. *Tompkins* [1947] 83 Cal.App.2d 71, 79 [187 P.2d 840]), deliberately not applying himself to his business (*Clark* v. *Clark* [1961] 193 Cal.App.2d 565, 566 [14 Cal.Rptr. 419]), intentionally depressing his income to an artificial low (*Elliott* v. *Elliott* [1958] 162 Cal.App.2d 350, 355-356 [328 P.2d 291]; *Estes* v. *Estes* [1958] 158 Cal.App.2d 94, 97 [322 P.2d 238]), or intentionally leaving his employment to go into another business (*Baron* v. *Baron* [1970] 9 Cal.App.3d 933, 941-942 [88 Cal.Rptr. 404])." *Philbin* v. *Philbin, supra,* 19 Cal.App.3d at p. 121.)

Thus although the court may order child support based on a spouse's ability to earn rather than his actual income, application of the ability to earn standard is limited. The standard is not imposed unless there is some conduct by the supporting spouse indicating deliberate behavior designed to avoid his financial responsibilities to his children. (Accord, *In re Marriage of Reese* (1977) 73 Cal.App.3d 120, 125 [140 Cal.Rptr. 589]; *In re Marriage of Barnert* (1978) 85 Cal.App.3d 413, 427 [149 Cal.Rptr. 616] [deliberate attempt by husband to show diminished income in his medical practice]; *In re Marriage of Rome* (1980) 109 Cal.App.3d 961, 965 [167 Cal.Rptr. 351];[8] *In re Jennings* (1982) 133 Cal.App.3d 373, 383 [184

---

[8]Mrs. Williams relies on *In re Marriage of Rome, supra,* 109 Cal.App.3d 964. There, three months after dissolution of a thirty-two-year marriage the husband, claiming changed circumstances on the basis of losing his job, sought an order to reduce his spousal support obligations from $1,000 to $100 per month. The wife requested a continuance on the ground it would not be difficult for her former husband to find comparable and equally lucrative employment. The trial court denied the request and instead set up a sliding scale for support payments contingent upon the husband's future income. The Court of Appeal reversed on two grounds. First, the order left the determination of the amount of support entirely within the husband's control. (*Id.,* at p. 965.) Second, the court's refusal to allow a continuance

Cal.Rptr. 53]; see also *Meagher* v. *Meagher* (1961) 190 Cal.App.2d, 62, 63-64 [11 Cal.Rptr. 650]; *In re Marriage of Hurtienne* (1981) 126 Cal.App.3d 374, 378-380 [178 Cal.Rptr. 748].)

Mrs. Williams argues this limitation is satisfied in the instant case because it is incredible Mr. Williams and his present wife would leave jobs netting them a combined income of $2,960 for a much more spartan life in Reno, Nevada. According to Mrs. Williams the only possible conclusion was Mr. Williams moved from Los Angeles in order to avoid his parental responsibilities.

The trial court rejected Mrs. Williams' characterization of her former husband's behavior. Instead, the court obviously believed Mr. Williams' testimony he and his wife had moved to Reno to lead a simpler life. Moreover, the court denied Mr. Williams' request to *reduce* the amount of support based on his reduced financial resources. Instead, the court increased his child support obligations by 25 percent. Under these circumstances, as well as Mrs. Williams' failure to demonstrate she needed more money, the amount of support awarded was not an abuse of discretion.

III. ▇▇▇ The Court Properly Considered Christine Williams' Current Unemployed Status Rather Than Her Former Salary When It Calculated the Money Available for Child Support.

Mrs. Williams also argues the trial court should have considered Christine Williams' ability to earn rather than her actual earnings when it made the support order. Thus, according to Mrs. Williams, the trial court should have calculated Mr. Williams' income based on Christine Williams' former salary at TRW instead of on her current unemployed status. We disagree.

We recognize in a motion to modify child support the court should consider the second spouse's income, if any, as available to reduce the paying spouse's personal expenses. When a second marriage reduces these expenses money is available for continued child support payments to the first spouse. (*Fuller* v. *Fuller* (1979) 89 Cal.App.3d 405, 410 [152 Cal.Rptr. 467]; *Gammel* v. *Gammel* (1979) 90 Cal.App.3d 90, 92-94 [153 Cal.Rptr.

so that the husband's efforts to find work could be reassessed effectively denied the wife the opportunity to invoke the ability to earn standard at a later proceeding. (*Ibid.*) The court in *Rome* expressly held there was insufficient evidence the husband was deliberately or in bad faith refusing to work to base the support order on his ability to earn rather than his actual earnings. (*Ibid.*) The only error was refusing to grant the continuance. We are accordingly unpersuaded *Rome* supports Mrs. Williams' contentions here. Indeed we find it difficult to determine the basis for counsel's insistence that *Rome* compels imposition of the ability to earn standard in this case.

169].) And accordingly the child support order may be based on this combined ability to pay.

We therefore agree if the second wife does choose to work, her income can be used in calculating how much child support should be paid. However, a second wife's *ability to earn,* as distinguished from her *actual* earnings, has never been considered the appropriate measure for determining the amount of income available to a husband for making support payments to his former wife. If we were to use the ability to earn standard as the measure for assessing the amount available for child support, the result would be imposing an affirmative obligation to work on a second wife in order to increase the money available to support a first wife's children. Here, Christine Williams quit her job to begin a new life in Reno with her husband and also to have children of her own. We do not accept Mrs. Williams' assertion that Christine Williams cannot become voluntarily unemployed to pursue these goals. We accordingly reject any claim the trial court erred by refusing to impose the ability to earn standard on Christine Williams.

*IV. *The Award of Attorney's Fees Was a Proper Exercise of Discretion.*

. . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Thompson, Acting P. J., and Pickard, J.,† concurred.

---

*See footnote, *ante,* page 57.
†Assigned by the Chairperson of the Judicial Council.