[No. B019998. Second Dist., Div. Three. June 22, 1987.]

In re the Marriage of JEANETTE C. and GLIFFORD M. SCHROEDER.
JEANETTE C. SCHROEDER, Respondent, v.
GLIFFORD M. SCHROEDER, Appellant.

COUNSEL

Glifford M. Schroeder, in pro. per., and Scott J. Spolin for Appellant.

Stearns, Gross, Moore & Rusch and James F. Rusch for Respondent.

## OPINION

KLEIN, J.—Appellant Glifford M. Schroeder (Husband) appeals from an order denying his requested modification of respondent Jeanette C. Schroeder's (Wife) spousal support, denying him attorney's fees and costs, and awarding attorney's fees to Wife.

Because the trial court erred in failing to recognize Wife's changed circumstances arising from cohabitation, the order is reversed and the matter remanded.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

An 18-year marriage with no minor children was dissolved by entry of a final judgment on June 22, 1982, pursuant to the terms of a January 13, 1982, interlocutory judgment. The interlocutory judgment provided in relevant part: "[Husband] shall pay to [Wife] as and for spousal support the sum of $600.00 per month payable one-half (1/2) on the first and one-half (1/2) on the 15th of each month commencing January 1, 1982, and continuing in that amount and in that manner until either party dies, (Wife) remarries or further order of court."

On February 20, 1986, Husband filed an order to show cause re modification of spousal support and for attorney's fees and costs. In a supporting declaration, Husband stated Wife was cohabiting with an adult male, and pursuant to Civil Code section 4801.5,[2] was no longer in need of spousal support. In the alternative, Husband sought a reduction in the level of support.

The matter was heard March 17, 1986. Wife testified that for the last 18 months, Ed Lara (Lara) had been living with her. Lara is a cabinet installer with a take-home pay of $350 per week. Lara was not paying any rent to Wife, nor contributing to the telephone or other utility bills. Her 1,800-square-foot house, with two bedrooms and a den, would rent for at least $750. For several months, Lara had been paying $60 of the $70 gardener's bill. He also pays for their travel, entertainment, and dining out.

[1] Because of an incomplete record on appeal, we take judicial notice of the superior court file. (Evid Code. §§ 452, 459.)

[2] All subsequent statutory references are to the Civil Code, unless otherwise indicated.

Wife pays the mortgage, homeowner's insurance, and property taxes, which total $200, telephone and utilities of $160, and groceries and household supply expenses of $300. Her net monthly disposable income, including a car allowance from her employer, is $1,090. She has accumulated $2,400 in savings.

Wife testified that while Lara did not make any significant cash contribution to the household expenses, he made up for it by doing a lot of work around the house. Lara planned to re-roof the garage, and had "done a lot of cement work ... a gate ... [and] electrical work ...."

Wife has the use of Lara's 1984 Corvette, and Lara has installed an eight- or ten-foot satellite dish on the roof of her home at no cost to her. Lara has also given her a $4,200 diamond ring and some new furniture.

The trial court found Wife's needs had not changed as a result of cohabitation, and denied any modification of support. The trial court also denied Husband's request for attorney's fees and costs, in the amounts of $1,215 and $637, respectively, and ordered Husband to pay $500 toward Wife's attorney's fees of $550.

Husband appeals.

## CONTENTIONS

Husband contends the trial court abused its discretion in not reducing the level of spousal support, and in its rulings as to fees and costs.

## DISCUSSION

1. *Appellate principles.*

■ A postjudgment order re modification is appealable under Code of Civil Procedure section 904.1, subdivision (b). (*In re Marriage of Acosta* (1977) 67 Cal.App.3d 899, 901, fn. 1 [137 Cal.Rptr. 33]; see *In re Marriage of Leib* (1978) 80 Cal.App.3d 629 [145 Cal.Rptr. 763].)

■ "Spousal support must be determined according to the needs of both parties and their respective abilities to meet these needs. (*In re Marriage of Cobb* (1977) 68 Cal.App.3d 855, 861 [137 Cal.Rptr. 670].) In this regard, a trial court has broad discretion and an abuse thereof only occurs when it can be said that no judge reasonably could have made the same order. (*In re Marriage of Norton* (1976) 71 Cal.App.3d 537, 541 [139 Cal.Rptr. 728].)"

*(In re Marriage of Rome* (1980) 109 Cal.App.3d 961, 964 [167 Cal.Rptr. 351].)

■ Likewise, an award of fees and costs is within the trial court's discretion. Such an award will be interfered with only if the reviewing court, after examining all the evidence in the light most favorable to the trial court's action, determines that no judge could reasonably have ruled in that manner. *(In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 113 [113 Cal.Rptr. 58].)

These principles govern our review of this case.

2. *General principles re effect of cohabitation on spousal support.*

Section 4801.5 provides: "(a) Except as otherwise agreed to by the parties in writing, there shall be a rebuttable presumption, affecting the burden of proof, of decreased need for support if the supported party is cohabiting with a person of the opposite sex. Upon a determination that circumstances have changed, the court may modify the payment of support as provided for in subdivision (a) of Section 4801. [¶] (b) Holding oneself out to be the husband or wife of the person with whom one is cohabiting is not necessary to constitute cohabitation as the term is used in this section. [¶] Nothing in this section shall preclude later modification of support upon proof of change of circumstances."

■ The statute was enacted presumably to protect the supporting spouse from an unfair advantage being gained by the supported spouse who cohabits with a person of the opposite sex. *In re Marriage of Leib, supra,* 80 Cal.App.3d at page 643, concluded "the Legislature created the presumption against a cohabiting former spouse supported by a divorced husband or wife based on thinking that cohabitation establishes a status for the benefit of the supported spouse and such status therefore creates a change of circumstances so tied in with the payment of spousal support as to be significant enough by itself to require a re-examination of whether such need for support continues in such a way that it still should be charged to the prior spouse. [Fn. omitted.]"

Professor Blumberg cites two reasons why cohabitation may reduce the need for spousal support. First, sharing a household gives rise to economies of scale. (Blumberg, *Cohabitation Without Marriage: A Different Perspective* (1981) 28 UCLA L.Rev. 1125, 1150.) Also, more importantly, the cohabitant's income may be available to the obligee spouse. However, "[w]hen one cohabitant receives alimony, ... , the cohabiting couple can operate to maximize joint wealth only by appearing to act individually, i.e., by not

pooling resources. In order to maintain the stream of income from the obligor spouse, the cohabitants must appear to maintain separate financial identities. [Fn. omitted.]" (*Ibid.*)

In *Leib,* Arnold's former spouse, June, and their son were living with one Leonard as a family unit. In addition to $250 per month child support, June received $500 in spousal support. Leonard worked as an automobile leasing salesman. June contributed her full-time services as a homemaker, housekeeper, cook and companion. The *Leib* court found the couple had either expressly or impliedly entered into a contract that each would in large part pay his/her own way. Leonard paid for dinners out, a European vacation and June's use of a Ferrari. Apart from those items, Leonard retained his independent assets and his earnings, and June, "to maintain the relationship between the two, . . . contribute[d] the earnings she could [otherwise] realize from independent employment . . . ." (*In re Marriage of Leib, supra,* 80 Cal.App.3d at p. 642.)

The *Leib* court determined June's full-time domestic services over a period of two and one-half years had a reasonable market value in excess of the use of a Ferrari and a trip to Europe. (*Ibid.*) It held "June has the undoubted right to gift her services, which have substantial value on the open market, to Leonard—but we are satisfied she has no right to ask a court to collect for her from her former husband spousal support in a sum sufficient to enable her to make the gift." (*Ibid.*)

■ We agree with *Leib* to the effect that a contract between cohabitants "must be fair and reasonable with respect to the rights of a supporting spouse" (*id.,* at p. 643), and that a person "receiving spousal support who cohabits with a person of the opposite sex, cannot give away his or her services where the result is to create a status of apparent continuing need and thus overcome the presumption created by section 4801.5." (*Ibid.*)

However, the *Leib* formula is limited in application. *Leib* used a "gift" analysis and apparently reduced June's alimony to the extent the value of the services she rendered to Leonard exceeded the value of her use of a Ferrari and the trip to Europe (See Blumberg, *Cohabitation Without Marriage: A Different Perspective, supra,* 28 UCLA L.Rev., at p. 1151.)

a. *Application here.*

In the instant case, unlike in *Leib,* it appears the market value of the benefits received by Wife exceeds the value of 18 months of housing and related benefits enjoyed by Lara. If only the *Leib* rationale were applied here, Husband would not be entitled to relief because Wife is apparently

running a surplus balance in her arrangement with Lara. However, the value of the Corvette use, satellite dish, diamond ring, and other items, should not be weighed against the rental value of the house to ascertain whether there is a quid pro quo between the parties. The real issue is whether the living arrangement of Wife and Lara is equitable as to Husband, as required by *In re Marriage of Leib, supra,* 80 Cal.App.3d at page 643, and whether Wife's support needs have diminished as a result of cohabitation.

■ By way of analogy, the law provides an award of spousal or child support will be based on the *supporting spouse's* ability to earn as distinguished from actual income, where the supporting spouse "is, in effect, acting in bad faith by either refusing work or engaging in other conduct designed to reduce … income." (*In re Marriage of Rome, supra,* 109 Cal.App.3d at p. 965; accord *Philbin* v. *Philbin* (1971) 19 Cal.App.3d 115, 121 [96 Cal.Rptr. 408].)

Unlike in *Rome* and *Philbin,* our focus is on the obligee, not the obligor. Nonetheless, the common underlying issue is good faith. ■ The relevant inquiry here is whether Wife is suppressing a meaningful financial contribution from her cohabitant Lara to the household expenses in order to show continuing need for spousal support.

3. *Trial court erred in denying modification.*

a. *Finding unsupported by the record.*

■ Under section 4801.5, if cohabitation is found to exist, the rebuttable presumption of decreased need for spousal support must be overcome by the supported spouse. (*In re Marriage of Leib, supra,* 80 Cal.App.3d at p. 635.) The fact of cohabitation is undisputed here. Accordingly, it was Wife's burden to show her need for spousal support had not diminished.

In ruling on the matter, the trial court noted that since judgment, Wife's monthly income had risen $150, while Husband's income had increased by $1,600, to $5,000.[3] It found "[e]ven if Mr. Lara were paying half the rental value of the house, it still wouldn't bring her up to the expenses she needs to make ends meet, according to her financial declaration. That, of course,

---

[3] The financial declarations in the record are contrary. Between judgment and the hearing on the order to show cause, Wife's monthly disposable income rose by $503 from $587 to $1,090, while her expenses increased from $1,451 to $1,618. Husband's monthly gross has gone from $4,410 to $5,000, but net income has remained constant. At time of judgment, it was $2,790; at the time of the hearing, he was netting $2,795 after taxes and support payments.

doesn't include the extra expenses incurred if he weren't doing repairs on the house. I think that probably at least balances out any expenses incurred as far as utilities are concerned. [¶] There is no problem with [Husband] paying the $600. It is only costing him about $312 a month to do that. While there is a rebuttable presumption [Wife's] needs have decreased, they haven't decreased to the extent it would [a]ffect the spousal support order. She needs that $600 to make ends meet, even with this fellow living there, even if he were paying half the rental value of the house."

■ Preliminarily, a supporting spouse's increased ability to pay, in and of itself, cannot justify denying a request for reducing support. (See *In re Marriage of Hoffmeister* (1984) 161 Cal.App.3d 1163, 1173-1174 [208 Cal.Rptr. 345].)

■ As indicated, the trial court made a finding that even if Lara were paying half the rental value of the house, Wife's needs would not decrease to the extent it would affect the support order. The finding is unsupported by the record. At the time of the hearing, the gap between Wife's net employment income of $1,090 and her expenses of $1,618, was $528. Wife testified the rental value of the house is $750; half of that is $375. In addition to shelter, Lara receives other benefits from the shared household, including telephone and other utilities, meals at home, newspaper and perhaps laundry and cleaning. Were Lara fully reimbursing Wife for these benefits, it is probable she would have no need for continued support.

The trial court considered as significant Lara's contribution by way of repair work on the home. However, maintenance is not a major outlay for Wife. Her expense declarations allocated initially $25, and then $70 per month for maintenance, which sum apparently goes wholly to pay the gardener.

Separately, the trial court failed to distinguish between repairs and improvements to the property. Repairs could substitute in part for cash contributions by the cohabitant. However, discretionary home improvements are another matter, and belong in the same category as gifts of personal property received by Wife.

b. *Arrangement between Wife and Lara contravenes section 4801.5.*

There is no evidence as to why Lara does not contribute money toward the usual costs of running a household from which he derives numerous benefits. It appears from this record that Wife and Lara may have entered into at least an implied contract. (*In re Marriage of Leib, supra,* 80 Cal.App.3d at p. 643.) Under such an agreement, Wife pays for all the

ordinary domestic expenses; in return, Lara provides Wife with nonessential and luxury items and pays for travel, entertainment, and restaurant meals.

We are unpersuaded by Wife's contention that if Lara did not live with her, expenses would be only slightly lower, and it is irrelevant that Lara adds only marginally to her expenses. In reality, she is acquiring assets and benefits, in exchange at least in part for the value of cohabitation in her home. However, Husband is not required to continue "to make up by way of spousal support he had theretofore as part of a dissolution judgment been ordered to pay to [Wife] the money value of [benefits] which [Wife], under the terms of the contract, gives to [Lara]." (*Ibid.*)

Nor is Wife's argument she would receive these benefits even if Lara did not live with her convincing. Of course Wife is free to receive gifts from Lara. What she cannot do is evade the strictures of section 4801.5 by accepting "gifts" in lieu of monetary reimbursement for joint household expenses, and thereby create a situation of apparent continuing need. (*In re Marriage of Leib, supra,* at p. 643.)

Section 4801.5 is a legislative acknowledgement that cohabitation may reduce the needs of the supported spouse. The arrangement between Wife and Lara elevates form over substance. By receiving reimbursement by way of "gifts," Wife's cash needs for support purposes appear unchanged despite cohabitation. While cohabitants are at liberty to deal with each other as they see fit, their "contract must be fair and reasonable with respect to the rights of [the] supporting spouse." (*In re Marriage of Leib, supra,* at p. 643.) The trial court here failed to recognize that the allocation of expenses between Wife and Lara undermines the statute and acts to Husband's detriment.

The record strongly indicates Wife's needs have decreased as a result of cohabitation. We remand to the trial court for a factual determination of the extent of her reduced need, with due consideration for the value of the benefits received by her, as well as the value of the benefits conferred upon Lara.[4]

4. *Contention re fees and costs waived.*

▮▮▮ Husband contends the trial court erred in denying him attorney's fees and costs, and ordering him to pay $500 toward Wife's fees.

---

[4] Wife's mortgage payment is $200. It is a fortuity the mortgage is relatively low, and the value of housing to Lara obviously exceeds $100. The proper measure of the benefit to him is the reasonable rental value.

An appellate brief "should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 479, p. 469.)

Husband's brief raises his entitlement to fees in a purely conclusory manner. This court is not inclined to act as counsel for him or any appellant and furnish a legal argument as to how the trial court's rulings in this regard constituted an abuse of discretion.

## CONCLUSION

A supported spouse may not evade section 4801.5 by accepting gifts from a cohabitant in lieu of actual reimbursement for shared living expenses. Noncash receipts of the supported spouse must also be considered in a determination of reduced need. Any arrangement between cohabitants must be fair as to the supporting spouse. They may not allocate expenses in a manner that creates an appearance of continuing need in order to maintain the flow of income from the supporting spouse.

## DISPOSITION

Reversed and remanded for further proceedings in light of this opinion. Each party to bear respective costs on appeal.

Lui, J., and Arabian, J., concurred.